**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**District Judge William J. Martínez**

Civil Action No. 11-cv-00913-WJM

GREGG J. SAVAJIAN,

      Applicant,

v.

KEVIN MILYARD, Warden, Sterling Correctional Facility, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on Applicant Gregg J. Savajian's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") (ECF No. 1).[1] Respondents filed an Answer (ECF No. 34) on February 27, 2012. Applicant filed a Reply (ECF No. 35) on March 19, 2012. After reviewing the pertinent portions of the record in this case including the Application, the Answer, the Reply, and the state court record (ECF No. 26), the Court concludes that the Application should be denied.

## I. BACKGROUND

The crime occurred in October 2003, when Applicant solicited another inmate in the Jefferson County Detention Facility to kill a deputy sheriff. Applicant's defense at trial was that the other inmate, Mr. Delgado, fabricated the story in an attempt to obtain a favorable plea bargain. On November 17, 2004, in Jefferson County District Court

---

[1] Because Applicant appears *pro se*, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21(1972). However, the Court does not serve as his advocate. *See Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Case No. 2003CR3131, a jury convicted Applicant of solicitation to commit first degree murder, introduction of contraband, and possession of contraband. The trial court sentenced Applicant on February 8, 2005, to a total of twenty-four years in the Colorado Department of Corrections.

The Colorado Court of Appeals (CCA) affirmed Applicant's conviction and sentence on September 7, 2006. *See People v. Savajian*, No. O5CA0472 (Colo. App. Sept. 7, 2006). The Colorado Supreme Court (CSC) denied certiorari review on March 12, 2007. *See People v. Savajian*, No. 06SC767 (Colo. Mar. 12, 2007) (unpublished).

Subsequently, Applicant filed a Colo. R. Crim. P. 35(c) postconviction motion that he later withdrew. On October 4, 2007, he filed a second Rule 35(c) postconviction motion that was denied. The CCA affirmed the denial of the second postconviction motion, and the CSC denied certiorari review.

## II. FEDERAL COURT PROCEEDINGS

Applicant asserts three claims in the Application. Claim Three contains twelve subparts. The Court conducted a preliminary review of the three claims and dismissed all but one subpart of Claim Three. The remaining claims are as follows:

1) Six and Fourteenth Amendment violations due to juror misconduct and a discriminatory peremptory challenge to excuse an African-American member of the venire by the prosecution;

(2) Fifth, Sixth, and Fourteenth Amendment violations due to insufficient evidence which includes perjured testimony, mistaken in-court identification, and prosecutor misconduct; and

(3) Right to effective assistance of counsel violation due to counsel's failure to object to sleeping jurors.

2

In his Reply, Applicant appears to challenge the Court's earlier disposition of the eleven subparts of Claim Three.

> Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.  Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.

*Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citations omitted).  For the following reasons, Applicant's construed motion to reconsider the dismissal of the eleven subparts in Claim Three will be denied.

Applicant states in the Reply, as he did in his Application, that his defense attorney failed (1) to investigate the leniency the state witness, Mr. Delgado, received in his own sentence for testifying against Applicant and (2) to produce a credible defense witness or make arrangements for other witnesses at the jail to be brought to trial. Applicant also contends, as he has in several pleadings, *see* ECF Nos. 13 and 21, that he has proof of newly discovered evidence.  This evidence is the same alleged evidence that the Court addressed in the January 30, 2012 Order and found was insufficient to support a finding of actual innocence.  *See* ECF No. 31 at 11.

Finally, Applicant asserts that he filed several motions to dismiss his postconviction attorney prior to and after the evidentiary portion of his Rule 35(c) evidentiary hearing.  He claims his requests were denied and as a result he was denied his right to present all of his ineffective assistance of counsel claims to the trial court. The Court has reviewed the transcript of the Rule 35(c) evidentiary hearing.  At the hearing, Applicant stated that he would like the public defender's office to represent him

3

and that he desired to retract all the motions he filed seeking dismissal of his

postconviction attorney. *See* Case No. 03CR3131, Oct. 17, 2008 Hr'g Tr. at 5. The

court offered Applicant the opportunity to proceed *pro se*, but he did not accept the

offer. *See id.* at 6. Also, when the court indicated that it would proceed with only the

one claim of ineffective assistance of counsel (failure to address the alleged sleeping

jurors), Applicant did not object to the court's directive. *Id.*

The Court, therefore, will deny the request for reconsideration because the

issues Applicant raises were addressed by the Court in the January 30, 2012 Order.

Applicant does not provide supporting evidence that this Court misapprehended the

facts, a party's position, or the controlling law. Accordingly, to the extent the remaining

claims are not procedurally defaulted as discussed below, the Court will consider the

merits of those claims.

### III.  LEGAL STANDARDS

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court,

unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

The Court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003). The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006) ] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the

> correct governing legal rule from Supreme Court cases, but
> unreasonably applies it to the facts. *Id.* at 407-08.
> Additionally, we have recognized that an unreasonable
> application may occur if the state court either unreasonably
> extends, or unreasonably refuses to extend, a legal principle
> from Supreme Court precedent to a new context where it
> should apply.

*House,* 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an

objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A]

decision is 'objectively unreasonable' when most reasonable jurists exercising their

independent judgment would conclude the state court misapplied Supreme Court law."

*Maynard*, 468 F.3d at 671.

In addition,

> evaluating whether a rule application was unreasonable
> requires considering the rule's specificity. The more general
> the rule, the more leeway courts have in reaching outcomes
> in case-by-case determinations. It is not an unreasonable
> application of clearly established Federal law for a state
> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 131 S. Ct. 770, 786,  --- U.S. --- (Jan. 19, 2011) (internal quotation

marks and citation omitted). The Court "must determine what arguments or theories

supported or . . . could have supported[ ] the state court's decision" and then "ask

whether it is possible fairminded jurists could disagree that those arguments or theories

are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* "[E]ven

6

a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citation omitted). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* (Internal quotations marks and citation omitted).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671. Furthermore,

> [a]s a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. at 786-87.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct, *see Sumner v. Mata*, 455 U.S. 591, 592-93 (1982), and Applicant bears the burden of rebutting the presumption by clear and convincing evidence, *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997). "The standard is demanding but not insatiable . . . [because] '[d]eference does not by

definition preclude relief.' "  *Miller-El  v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

A claim, however, may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Richter*, 131 S. Ct. at 784.  ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning").  Furthermore, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85.  Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas applicant's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 784.

In other words, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the Court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178.  "[T]his 'independent review' should be distinguished from a full de novo review of the [applicant's] claims." *Id.*  Likewise, the Court applies the AEDPA deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal

standard.  *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).  If a claim was

not adjudicated on the merits in state court, and if the claim also is not procedurally

barred, the Court must review the claim *de novo* and the deferential standards of

§ 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## IV.  DISCUSSION

**A.    Claim One**

As set forth above, Applicant asserts a violation of his Six and Fourteenth

Amendment rights due to juror misconduct and the prosecution's discriminatory

peremptory challenge to excuse an African-American member of the venire.

### 1.    Peremptory Challenge

Applicant contends that his trial took place during the Iraq war and he is of

Armenian descent with olive colored skin, and middle eastern physical attributes.  He

further contends that the jury was comprised of all Caucasians and he was accused of

solicitation to kill a white sheriff.  Applicant concludes that the prosecution's use of a

peremptory challenge to excuse the only African-American on the jury venire is prima

facie evidence of a racially discriminatory challenge and in violation of *Batson.*

With respect to Applicant's *Batson* claim the CCA found as follows:

> Defendant first argues that the trial court erred by finding that
> he had not carried his burden of proving that the prosecutor
> engaged in purposeful racial discrimination during jury selection.
> We disagree.
>
> The Equal Protection Clauses of the United States and Colorado
> Constitutions guarantee that potential jurors will not be excluded from
> service on account of race or national origin. *Batson v. Kentucky*, 476 U.S.
> 79, 88, 89, 106 S, Ct. 1712, 1718-19, 90 L. Ed.2d 69 (1986); Valdez v.
> People, 966 P.2d 587, 589 (Colo. 1998).

In evaluating allegations of discriminatory jury selection, the court employs a three-step process. First, the defendant must make a prima facie showing that the prosecution excluded jurors based solely on their race. Second, if the defendant makes this showing, then the burden shifts to the prosecution to articulate a race-neutral reason for excluding the jurors in question. This burden requires the prosecution to provide only a facially race-neutral reason, not an explanation that is persuasive or even plausible. *Valdez v. People, supra*. Third, if the prosecution provides a race neutral reason, the trial court must consider all relevant circumstances to determine whether the defendant has proved, by a preponderance of the evidence, purposeful racial discrimination. *Valdez v. People, supra*.

"We review de novo the trial court's legal conclusions on steps one and two of the *Batson* analysis, deferring to any underlying factual findings, including any predicate credibility determinations. *People v. Hogan*, 114 P.3d 42, 52 (Colo. App. 2004). However, "the trial court's determination in the third step of the *Batson* analysis of actual racial discrimination is an issue of fact to which we afford due deference and review only for clear error." *Valdez v. People, supra*, 966 P.2d at 590.

Here, after the prosecutor used a peremptory challenge to remove an African-American prospective juror, defendant objected based on *Batson*. The trial court made a finding that, because the prospective juror was the only African-American on the venire panel, defendant had made a prima facie showing of discrimination.

The trial court then called upon the prosecutor to explain his decision. In response, the prosecutor stated that he had excused the prospective juror because the prospective juror had admitted that he was a convicted felon and he had described being targeted by law enforcement officers. In addition, the prosecutor informed the court that, although he could not "remember the exact word," he recalled that the prospective juror had said he was the director of counseling services for "troubled youth, or something like that."

The trial court overruled defendant's objection based on the prosecutor's explanation of his decision. More specifically, the court found that the prospective juror's felony conviction and his experiences with police officers were legitimate "nondiscriminatory bases for the exercise of a peremptory challenge."

On appeal, the People do not dispute the trial court's finding that defendant made a prima facie showing of discrimination. Thus, we begin our analysis at the second stage of the inquiry.

Applying a de novo standard of review to the prosecutor's explanation, we agree with the trial court that the proffered reasons established a race-neutral reason for removing the prospective juror. Accordingly, the dispositive question is whether, at the third and final step of the analysis, the trial court erred.

In his brief on appeal, defendant makes much of the fact that the prosecutor did not pose any questions directly to the prospective juror here at issue. Although we acknowledge that the absence of such individualized questioning has been recognized as a factor which may be indicative of purposeful discrimination, *see People v. Gabler*, 958 P.2d 505, 508 (Colo. App. 1997), in this case the record shows that the prosecutor was unable to individually question several prospective jurors because his allotted time expired. Under these circumstances, we cannot fault the trial court for not attributing significance to the fact that the prosecutor did not conduct individualized questioning of the prospective juror here at Issue.

Nor are we persuaded by defendant's claim that the prosecutor's concern about the nature of the prospective juror's employment was "entirely fabricated." Although the prosecutor's recollection of the prospective juror's employment was -- by his own admission -- somewhat imprecise, it was a reasonable characterization of the prospective juror's highly-relevant disclosure that he worked with "people that have developmental disabilities that are sex offenders."

As noted above, the two factors which the trial court found most compelling were the prospective juror's prior felony conviction and his statements indicating that he felt he had been treated unfairly by law enforcement officials. We conclude the record supports the trial court's reliance upon these factors, notwithstanding defendant's emphasis of the prospective juror's additional statements indicating that he could be impartial, and that his faith in law enforcement had been "somewhat restored."

In summary, we do not find clear error in the trial court's ruling that defendant failed to carry his burden of proving purposeful racial discrimination.

*Savajian*, No. 05CA0472 at 1-5.

In *Batson*, the U.S. Supreme Court held that the Equal Protection Clause

prohibits the prosecution's use of peremptory challenges to exclude potential jurors on

11

the basis of their race.  *Batson*, 476 U.S. at 86.  The three-part procedure set forth in

*Batson* to evaluate claims that the prosecution impermissibly used its peremptory jury

challenges is the same procedure used by the CCA in analyzing Applicant's *Batson*

claim.

Upon review of the trial transcript the Court finds that during voir dire the

following questioning took place between Applicant's defense attorney and Mr. Younger,

the African-American potential juror, regarding his response to the question posed to

him by the defense attorney, "how do you judge someone's credibility."

> MR. YOUNGER:  Well, I work with people with developmental disabilities and some of them do not have the ability to communicate and I also work on another spectrum, people that have developmental disabilities that are sex offenders, so I have to make determinations on where I can take them and how they're going to interact with the public and I've boiled it down to just body language, listening to what they have to say, just watching them closely, just watching their mannerisms, finding out the things that they enjoy.

> I have to make a determination you know based on that person's character.  I just – can't just look at a person and say I can't take this person somewhere or I don't believe him, I have to listen to them, I have to watch them.

> MS. COOPER:  How are you just going to judge credibility?  You're going to have to have somebody on the stand and they say he did something and somebody else saying he didn't.  You're not going to have the opportunity over the months or weeks that you've had in your employment or maybe even years you've had with your children, how are you going to look at somebody on the stand and judge credibility?

> MR. YOUNGER:  I'm just going to have to listen to what they have to say and actually not judge their credibility, I'm just going to have to listen to what they have to say and make a determination from there because I can't judge them right there and then because I don't know.
> MS. COOPER:  So if somebody got on the stand and said something that's the only evidence you have, you don't have videotape, no one caught in the action, the question is, that person is presumably telling the truth, would that be a fair statement?

MR. YOUNGER:  I don't know, that is something that's hard.  I've been on the other end all the time, you know people make determinations to me all the time.

MS. COOPER:  Explain what you mean by that?

MR. YOUNGER:  I've never been in trouble before in my life and the very first time that I'm with some people that do something wrong you know I get convicted of a felony.  Now granted you know I owned up to it and said hey I was in there and I seen what happened.  I took the punishment.

Now you know I have to go through a process of rebuilding my character because of one mark you know on my life and on top of that even before I ever got convicted of a felony, being pulled over nine times with no speeding tickets, no tickets whatsoever, I mean–

MS. COOPER:  Well you look like a criminal.  I shut my eyes and I describe a criminal and it would be a black male just like you.

MR. YOUNGER:  Exactly.  My faith in police officers is somewhat restored just because of marshal arts and I've gone over with my teacher to help teach these people you know self-defense and this kind of stuff so it's been restored, but I've been on the other end of the spectrum where I've been harassed, I've been hit, beat on.

I've seen the worst of the worst and I've seen the best of the best, so I try to not to make any more determinations as far as people, looking at him, because I've been on that end so I don't want to judge anybody because I know how it feels.  So I just want to listen to what they want to say before I make any determination.

MS. COOPER:  So could you listen and be a fair and impartial juror?

MR. YOUNGER: Yeah I could.

Nov. 15, 2004, Trial Tr. at 97-100.

At a later point in voir dire, the prosecution sought to raise a peremptory challenge to excuse Mr. Younger.  Applicant's defense attorney objected to the prosecution's peremptory challenge under *Batson* and the prosecution answered.  The colloquy is as follows:

THE COURT:  All right, Ms. Cooper, at the bench you made a *Batson* challenge with regard to Mr. Younger.

MS. COOPER:  Yes, your Honor.

THE COURT:  Would you like to put the basis -- well, put it on the record and then we'll have the prosecutor respond.

MS. COOPER:  Yes your Honor.  As the Court is aware and can see, Mr.--

THE COURT:  I'll take judicial notice that Mr. Younger was the only black man on the panel.

MS. COOPER:  He answered no questions differently than anyone else. In fact the district attorney did not even ask Mr. Younger other than one or two questions and those were the group questions.  There was no reason to strike Mr. Younger and for that reason we would say that we raised the prima facie issue as to Mr. Younger's mark was a discriminatory strike.

THE COURT:  All right.  Would you like to place the reasons on the record for your exercise of a peremptory challenge as to Mr. Younger?

MR. BRAUCHLER: Judge, so that I'm clear I think the procedure is the Court has to make some findings that there is a prima facie case of discrimination I guess and I'm happy to put those on but to keep the record clear if the Court is going for a prima facie based on one excusal I think the Court should –

THE COURT:  I'll find there's a prima facie case based on the fact that as far as I could tell Mr. Younger was pretty fair and impartial.  He is the only black [sic] on the panel and he was excused by the prosecution.

MR. BRAUCHLER:  Your Honor, the reasons I excused Mr. Younger is severalfold not the least of which is he admitted to being a convicted felon while going through voir dire.  Than in and of itself gives me some pause despite his words he has the ability to be truly impartial where the state comprises all but one of the witnesses and the witness is someone with whom the state has made a deal.

Also he has mentioned his history, he feels targeted by law enforcement in the past.  He has also indicated that his profession is as a director of counseling service for I think troubled -- I can't remember the exact word but troubled youth or something like that.  Having heard -- I listened intently as he gave his descriptions as to whether or not he was

predisposed for, one, forgiveness for people in situations like that and, two, maybe he has some insider information about the way people that have been trouble in conduct themselves or other people who have been in trouble.

Those are all issues that will be raised in this case and those were the reasons he was excused, it has nothing to do with gender or race or anything else.

I would further say there was one other convicted person named Mr. Peterson.  I excused him as well for similar reasons.

THE COURT:  All right, did you want to say anything further.

MS. COOPER:  Just briefly, there was no questions asked.  Mr. Younger said he was with people and he ended up going to another question.  The question did not even -- the question was not asked if he was charged, if he received a DJ, does he have a mark.  The -- Mr. Peterson said yeah I have an F6 and things like that.  Mr. Younger, no further questions were asked.

He did say he could be fair and impartial.  He said he's been on both sides of the spectrum as did most of the other prospective jurors.  Thank you.

THE COURT:  All right, the Court's going to make the following findings.  That the fact that the -- that Mr. Younger had a charge, a criminal charge of a felony nature himself and that he himself has felt that he has been targeted by law enforcement are nondiscriminatory bases for the exercise of a peremptory challenge and I will let the challenge stand. . . .

Nov. 15, 2004 Trial Tr. at 158-61.

The United States Supreme Court held in *Batson* that the Fourteenth

Amendment's Equal Protection Clause prohibits the prosecution's use of peremptory

challenges to exclude potential jurors on the basis of their race.  *Batson*, 476 U.S. at 86.

The first step of the three-step process used for evaluating *Batson* claims of racial

discrimination is moot "whenever the prosecutor offers a race-neutral explanation for his

peremptory challenges and the trial court rules on the ultimate factual issue of whether

the prosecutor intentionally discriminated." *See United States v. Barrett*, 496 F.3d 1079, 1104 (10th Cir. 2007) (citing *United States v. Johnson*, 941 F.2d 1102, 1108 (10th Cir. 1991)).  The trial court's decision on the ultimate question of discriminatory intent is "a finding of fact of the sort accorded great deference on appeal." *See Hernandez v. New York*, 500 U.S. 352, 364 (1991).  "The disposition of a *Batson* claim is a question of fact subjected to the standard enunciated in 28 U.S.C. § 2254(d)(2)." *Sallahdin v. Gibson*, 275 F.3d 1211, 1225 (10th Cir. 2002).  "The ultimate question of whether [applicant] has established purposeful discrimination in violation of *Batson* is a question of fact subject to deferential review." *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004) (quoting *Cochran v. Herring*, 43 F.3d 1404, 1408 (11th Cir. 1995).

Whether the prosecution's explanation is facially neutral is subject to *de novo* review and whether the Applicant established that the prosecution intended to discriminate is subject to a clearly erroneous standard.  *See United States v. Sneed*, 34 F.3d 1570, 1580 (10th Cir. 1994).  The trial court's finding of fact is afforded great deference because the finding turns on the trial court's evaluation of the prosecutor's credibility.  *See United States v. Nelson*, 450 F.3d 1201, 1207 (10th Cir. 2006). "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.' " *Hernandez*, 500 U.S. at 365 (quoting *Wainwright v. Witt*, 469 U.S. 412, 428 (1985).

*Batson* requires both a clear and reasonably specific explanation of the prosecutor's legitimate reasons for exercising a challenge.  *See Batson*, 476 U.S. at 98 n. 20.  A legitimate reason is not required to make sense, but only in keeping with a defendant's equal protection rights.  *Purkett v. Elem*, 514 U.S. 765, 769 (1995).  "Unless

a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360.  "A race neutral explanation is simply any explanation, no matter how implausible, that is based on something other than the race of the juror.  The proffered reason need not be persuasive, or even plausible, so long as it is facially valid." *See Barrett*, 496 F.3d at 1105 (citation and internal quotation marks omitted).

Here, Applicant, who is of Armenian descent, challenged the prosecution's removal from the venire panel of the only black juror.  The prosecution was afforded the opportunity to address the challenge and stated that because Mr. Younger admitted to being a felon during voir dire he did not believe that Mr. Younger would be impartial, despite his saying he would be impartial.  The prosecution also pointed out that two of the state witnesses were county deputies and the third witness made a deal with the state in exchange for his testimony against Applicant.  The prosecution further stated some concern that Mr. Younger worked with troubled individuals and would be predisposed to forgive someone like Applicant.  Finally, the prosecution pointed out that he had made a peremptory challenge of another prospective juror that was a convicted felon.

Although Applicant's defense attorney argued Mr. Younger did not state he was convicted of a felon, the transcript belies her argument.  Nov. 15, 2004 Trial Tr. at 99.  Mr. Younger also stated he was stopped nine times without receiving a speeding violation, was harassed, hit, and beaten, and intimated, and the individuals involved in these incidents were police officers.  *Id.*  Based on Mr. Younger's statements, the Court finds that the prosecution's reasoning is race neutral and facially valid.  Applicant,

therefore, has failed to rebut with clear and convincing evidence that the trial court's decision to deny the *Batson* challenge was prejudicial and a violation of his constitutional rights.

The CCA decision regarding this claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Subpart 1 of Claim One, therefore, lacks merit and will be dismissed.

## 2. Juror Misconduct

Applicant contends that two female jurors were observed sleeping during the most crucial part of the trial, which was when Mr. Delgado failed to identify him as the inmate who solicited the witness to 'take out' a sheriff's deputy.  ECF No. 1 at 7. Applicant first introduced the theory of a sleeping juror in the motion for new trial that he filed on December 2, 2004.  *See People v. Savajian*, No. 03CR3131, Flat File at 153-58. In the motion, Applicant argued in part as follows:

> The second basis of jury misconduct occurred when Juror Number 1 fell asleep during part of the trial.  In *People v. Evans*, 710 P.2d 1167 (Colo. App. 1985), the Court of Appeals called closing arguments as one of the most "consequential" portions of trial, and held that the defendant was prejudiced when a juror slept during argument, as a result of which the lower tribunal should have granted a new trial.  The Court opined, holding that jury misconduct which materially affects the substantial rights of a party preventing a fair and impartial trial may serve as grounds for a new trial, provided that the defendant is able to establish that he was prejudiced by the misconduct.  *See Evans*, 710 P.2d at 1168.  The prejudicial impact of the misconduct under inquiry, however, the court added, is a question of fact to be determined in light of all the circumstances of the trial, and the determination whether prejudice has

occurred is within the sound discretion of the lower tribunal, and only where that discretion has been abused will a new trial be ordered. *See id.*

Here, Defendant was charged with Solicitation of First Degree Murder. All of the evidence lasted the equivalent of only one day. The juror dozed off during the course of the evidentiary portions of the trial. We submit to the Court that a juror who has not heard all the evidence in a case is grossly unqualified to render a verdict.

*Savajian*, No. 03CR3131, Flat File at 156-57.

In response to Applicant's motion for a new trial, the State argued as follows:

The People, including both undersigned Deputy District Attorneys, and their advisory witnesses, Investigator David Swavely did not witness any juror sleeping or failing to pay attention during the trial. Presumably, had the Court witnessed a juror sleeping or failing to pay attention during any portion of the trial, the Court would have addressed the juror and made an appropriate record on the issue. The absence of such a record is an indication that the Court did not witness any juror sleeping or fail [sic] to pay attention throughout the trial.

Of greater concern is that the Defendant never made any objection throughout the trial alleging that a juror was sleeping through any portion of the trial. Likewise, the Defendant did not make a record of any alleged sleeping juror subsequent to the finding of guilt by the jury. Unlike the facts of the case cited by the Defendant, *People v. Evans*, 710 P.2d 1167 (Colo. App. 1985), in this case there is no indication in the record at any stage of the proceedings of any juror sleeping or failing to pay attention throughout the trial.

*Id.* at 191-92.

The trial court summarily denied the motion for a new trial at the sentencing

hearing. Feb. 8, 2005 Hr'g Tr. at 4.

With respect to Applicant's sleeping juror claim the CCA found as follows:

[W]e conclude the trial court acted within its discretion in not granting relief based on defendant's generalized allegations that a juror had fallen asleep. Defendant's motion failed to identify the person who had purportedly observed the juror sleeping. Nor did the motion specify what observations had caused the unidentified person to conclude that the juror was asleep. Moreover, the motion did not specify when during the trial this had allegedly occurred, and it did not

19

> include an explanation as to why the unidentified person did not contemporaneously inform the court of the problem.

*Savajian*, No. 05CA0472 at 11.

Applicant's issue is analogous to a case of juror impartiality. In a juror impartiality claim, to establish a due process violation, the trial must have resulted in actual prejudice or that it gave rise to a presumption of prejudice because it involved "such a probability that prejudice will result that it is deemed inherently lacking in due process." *Estes v. Texas,* 381 U.S. 532, 542 (1965). The Court also notes that the Ninth Circuit Court of Appeals has found that a sleeping juror does not constitute juror misconduct. *Morris v. Ylst,* 52 F.3d 334, (table, text in Westlaw) 1995 WL 234352 (9th Cir.), *cert. denied,* 116 S. Ct. 109 (1995).

A state trial judge has the "benefit of observing the general demeanor of the jurors as the basis for his general finding." *Brecheen v. Reynolds,* 41 F.3d 1343, 1350 (10th Cir. 1994) (quoting *Church v. Sullivan*, 942 F.2d 1501, 1518 (10th Cir. 1991) (internal quotation marks omitted)). Like other juror-related issues, including the credibility and demeanor-matters of a juror, *see Wainwright*, 469 U.S. at 424-26, the trial court is in the best position to assess a juror's misconduct, including sleeping during the presentation of testimony. Here, Applicant did not specify to the trial court in his motion for a new trial who saw and would testify that a juror was sleeping during the evidentiary portions of the trial. He also failed to identify what specific evidence was presented while a juror allegedly slept. Not until Applicant presented his ineffective assistance of counsel claim in his Colo. R. Crim. P. Rule 35(c) postconviction motion did members of

20

his family testify that they observed two jurors sleeping, a man and a woman, during Mr. Delgado's testimony and other portions of the trial.

Applicant only identified one sleeping juror in the due process claim he raised on direct appeal.  To the extent that Applicant claims the trial court violated his due process rights when the court allowed two female jurors to sleep through Mr. Delgado's testimony, and other evidentiary portions of the trial, the claim is procedurally defaulted. Applicant failed to assert this claim in any state court and now is precluded from doing so in this habeas action.

Even if the Court considers Applicant's sleeping juror claim as presented on appeal, the claim is no more than generalized allegations.  The trial court's findings are proper and are entitled to deference, *Sumner*, 455 U.S. at 592-93.  Applicant, therefore, does not meet his burden of rebutting the presumption of correctness by clear and convincing evidence.  *Houchin*, 107 F.3d at 1470.

Accordingly, the Court finds that the CCA's determination is not contrary to or an unreasonable application of any clearly established rule of federal law as determined by the U.S. Supreme Court.  The sleeping juror claim, Subpart 2. of Claim One, as it pertains to a violation of Applicant's due process rights lacks merit and will be dismissed.  The Court will address below Applicant's Sixth Amendment claim regarding two sleeping jurors.

**B.    Claim Two**

As stated above, Applicant asserts that his Fifth, Sixth, and Fourteenth Amendment rights were violated due to insufficient evidence which includes perjured testimony, mistaken in-court identification, and prosecutor misconduct.

**1. Procedural Default**

Although Respondents in their Pre-Answer concede that Claim Two was presented in State courts as a federal constitutional claim with respect to the insufficient evidence and new trial arguments, Respondents now in their Answer assert that other portions of Claim Two were not exhausted and are procedurally defaulted. Respondents assert that they did not realize Applicant was raising new assertions in Claim Two until after the Court entered the January 30, 2012 Order. Specifically, Respondents contend the following claims were not addressed in any state court, including: (1) Mr. Delgado, the state's witness, was arrested and charged with additional burglaries while he was on probation and awaiting Applicant's trial; (2) the prosecution withheld information regarding the location of Applicant's cellmate, who would have testified in Applicant's favor; and (3) the prosecution misrepresented material evidence in closing arguments.

"[S]tate-court procedural default . . . is an affirmative defense," and the state is "obligated to raise procedural default as a defense or lose the right to assert the defense thereafter." *See Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). In the Order to File Pre-Answer Response, the Court instructed Respondents to address the affirmative defense of exhaustion of state court remedies. The Court also directed Respondents that if they did not intend to raise exhaustion as an affirmative defense they must notify the Court.

22

The "best procedure is to plead an affirmative defense in an answer or amended answer."  *See Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006) (finding defendants were not necessarily barred from raising a qualified immunity defense in their motion for summary judgment).   A constructive amendment is allowed if there is no prejudice to the opposing party and the amendment is not unduly delayed, done in bad faith, or with a dilatory motive.  *Id.*  Here, Respondents' procedural default claim clearly was presented in the Answer, and Applicant had sufficient time to address the affirmative defense in his Reply to the Answer.  There is no evidence of prejudice to Applicant or of undue delay, bad faith, or dilatory motive by Respondents.

Respondents, therefore, are not barred from raising the exhaustion affirmative defense in their Answer with respect to Claim Two.

In response to Respondents' argument, Applicant contends he repeatedly requested that his postconviction attorney raise all issues he asserted in his Rule 35(c) postconviction motion, which included each of the three claims Respondents assert are procedurally defaulted, but the attorney refused to investigate these claims.

The findings by the Court in the January 30, 2012 Order bear repeating here.  A collateral counsel's failure to present all claims requested by a defendant is not sufficient to show cause for procedural default.  *See Parkhurst v. Shillinger*, 128 F.3d 1366, 1371 (10th Cir. 1997) (an applicant is not entitled to assistance of counsel in a postconviction motion) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).  Usually, "ineffective representation in state post-conviction proceedings is inadequate to excuse a procedural default."  *See Spears v. Mullin*, 343 F.3d 1215, 1255 (10th Cir. 2003); *Coleman v. Thompson*, 501 U.S. 722, 757 (1991) ("[A]ny attorney error that led

to the default of [ ] claims in state court cannot constitute cause to excuse default in federal habeas."); *Parkhurst*, 128 F.3d at 1371; 28 U.S.C. 2254(i) (Ineffectiveness of counsel in a state collateral postconviction proceeding is not a ground for relief in a § 2254.)

Most recently, the United States Supreme Court found basis for ineffective assistance of counsel in a state postconviction proceeding.  *See Maples v. Thomas*,132 S. Ct. 912, 2012 WL 125438 (Jan. 18, 2012).  The facts in *Maples*, however, easily are distinguishable from those in this case.  In *Maples*, the applicant's attorneys did not inform him that they had changed employment and were unable to represent him in their new job.  *Maples*, 132 S. Ct. *916-17,  2012 WL 125438, **4.  Also, no other attorney from the law firm moved to substitute counsel or inform the court of the change in applicant's representation.  *Id.*  The Supreme Court determined that applicant's attorneys abandoned him, left him unrepresented at a critical time in his postconviction proceeding, and left him unaware of his need to proceed *pro se*, resulting in a failure to file a timely appeal after the trial court denied the postconviction motion.  *Id.* at *922-28, **10-**15.  The Supreme Court also noted that applicant had been sentenced to death, appointed attorneys in death penalty cases in Alabama are under compensated and selected based on low eligibility requirements, and neither attorney in this case had tried a penalty phase of a capital case.  *Id.*

In contrast, Applicant had representation in both the district court and the appellate court in his postconviction proceeding.  In the district court, his attorney reviewed the merits of his claims and determined that only one of Applicant's ineffective assistance of counsel claims had merit.  His attorney did not abandon him.

The district court had the opportunity to address Applicant's concerns.  Applicant appeared before the court at the evidentiary hearing and stated his concerns and desire to proceed with all of the ineffective assistance claims.

As stated above, a collateral counsel's refusal to present certain claims is not sufficient to show cause for procedural default.  *See Parkhurst*, 128 F.3d at 1371. Therefore, officials did not interfere and cause compliance with the State's procedural rule to be impracticable.  The Court need not address whether Applicant has shown prejudice because he has failed to demonstrate cause.

Nonetheless, a fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  A "substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  To demonstrate a fundamental miscarriage of justice, Applicant first must "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Id.*  Applicant then must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Id.* at 327.

Applicant asserts newly discovered evidence based on a statement by his defense attorney that a state witness committed perjury.  Applicant attached the defense attorney's statement to Document No. 21, an affidavit he prepared.  The defense attorney's statement does not present any new reliable evidence that demonstrates Applicant actually is innocent or show that a factor external to the defense

impeded his ability to comply with the state's procedural rule.  The defense attorney's

statement only goes to the credibility of the state's witness, which was already before

the jury at trial.  Nothing in the statement is newly discovered evidence that would

support a finding that Applicant did not solicit the state witness to murder a sheriff

deputy.  As a result, all three claims identified by Respondents above, which support the

prosecution misconduct claim, are barred in a federal habeas action.  The Court will

proceed to review the merits of Applicant's exhausted insufficient evidence claims.

### 2.      Insufficient Evidence

In support of his insufficient evidence claim, Applicant asserts that the entire

criminal case rested on the fabricated, plea-bargained testimony of a four-time

convicted felon.  He further asserts that the state's witness was not able to identify him

at trial and pointed to and described another man in the courtroom gallery.

With respect to Applicant's insufficient evidence claim the CCA found as follows:

> Defendant next argues that the evidence was insufficient to support
> the jury's verdict finding him guilty of solicitation to commit first degree
> murder.  Again we disagree.
>
> To sustain a conviction for criminal solicitation, the
> evidence must show that the defendant (1) commanded,
> induced, entreated, or otherwise attempted to persuade
> another person to commit a felony, (2) with the intent to
> promote or facilitate the commission of that crime, and (3)
> under circumstances strongly corroborative of that intent.
> Section 18-2-301, C.R.S. [2005].
>
> A conviction of criminal solicitation must be based on
> proof beyond the mere verbal act of soliciting another to
> commit a crime.  *People v. Aalbu*, 696 P.2d 796 (Colo.
> 1985).  The prosecution must present enough evidence of
> the circumstances surrounding the act of solicitation to
> permit a jury to find beyond a reasonable doubt that the
> solicitation was done with the specific intent to promote or

facilitate the commission of the crime solicited.  *People v. Latsis*, 195 Colo. 411, 578 P.2d 1055 (1978).

> Corroborative circumstances may include activity that
> does not occur simultaneously with or immediately
> subsequent to the verbal act of solicitation.  *People v. Aalbu
> supra*.  And, if such circumstances indicate that the
> defendant intended to promote or facilitate the commission
> of the crime, it is irrelevant whether the person solicited
> actually believes he has been solicited.

*People v. Hood*, 878 P.2d 89, 94 (Colo. App. 1994).

In assessing the sufficiency of the evidence supporting a guilty verdict, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt.  In applying this standard, we must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence.  *Kogan v. People*, 756 P.2d 945, 950 (Colo. 1988).

> [T]he fact finder, not an appellate court, determines
> the credibility of witnesses, and only when testimony is so
> palpably incredible and so totally unbelievable may we reject
> it as a matter of law.  Testimony is incredible as a matter of
> law when a witness describes events she could not possibly
> have seen or that are not possible under the laws of nature.
> However, testimony that is merely biased, conflicting, or
> inconsistent is not incredible as a matter of law.

*People v. Dash*, 104 P.3d 286, 289 (Colo. App. 2004) (quotations and citations omitted).

Here, the evidence, when viewed according to the foregoing standards, established the following facts.

Defendant was arrested on an unrelated charge and transported to the county jail.  At the time he was booked into the jail, defendant was wearing a knee brace.

While defendant was incarcerated in the jail, a deputy provided defendant with a razor and supervised defendant as he used the razor to shave his head.  The deputy testified that defendant shaved his hair into a

"bowl" shaped pattern with two longer strands that formed "strips," or "tail[s]," in the back.

Another inmate at the county jail (the informant) testified that, at the time defendant shaved his head, he and defendant were housed in adjacent cells.  According to the informant, defendant became upset after other inmates began mocking his haircut.  When speaking with the informant, defendant blamed the deputy for the poor haircut, claiming that the deputy had not provided him with sufficient time to finish shaving his head.

Defendant offered the informant two hundred dollars to "take out" the deputy.  Defendant then provided the informant with a piece of metal and demonstrated how it could be fabricated into a weapon by sharpening it.

The next day, the informant contacted the deputy and disclosed what had occurred.  The informant gave the deputy the piece of metal which he had received from defendant.

The deputy searched defendant's cell and found two other pieces of metal hidden in defendant's mattress, one of which had been sharpened.  In addition, the deputy discovered that defendant's knee brace had been disassembled.

On appeal, defendant urges us to discredit the testimony of the informant because he was a thrice-convicted felon who negotiated a highly-favorable disposition in another pending felony case in exchange for his testimony in this case.  Although we acknowledge that there was a substantial basis for impeachment of the informant's credibility, that information was put before the jury, and nothing about the informant's testimony was so palpably incredible or so totally unbelievable that we may reject it as a matter of law.  *See People v. Dash, supra.*

Nor are we persuaded by defendant's claim that, because it was not definitively proved that the piece of metal in the informant's possession came from defendant's knee brace, the People did not carry their burden of presenting independent evidence to corroborate the alleged verbal act of solicitation.  Based on our review of the record, we are satisfied that reasonable jurors could have concluded that defendant gave the informant the piece of sharpened metal in conjunction with his euphemistic request to have the informant kill the deputy.  *See Kogan v. People, supra*, 756 P.2d at 950 (an appellate court should not sit as a thirteenth juror).

*Savajian*, No. 05CA0472 at 5-9.

The standard for sufficiency of the evidence, which was clearly established when Applicant was convicted, is set forth in *Jackson v. Virginia,* 443 U.S. 307 (1979).  In *Jackson,* the Supreme Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

This standard reflects the "longstanding principle that it is the jury's province to weigh the evidence and to draw reasonable inferences from testimony presented at trial." *Turrentine v. Mullin,* 390 F.3d 1181, 1197 (10th Cir. 2004).  The Court's review under this standard is " 'sharply limited' and a court 'faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Messer v. Roberts,* 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Wright v. West,* 505 U.S. 277, 296-97 (1992)).

Sufficiency of the evidence is a mixed question of law and fact. *Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006).  *Maynard* further states, however, that the inquiry is not simply dealt with under 28 U.S.C. § 2254(d)(1) as *McKune* indicates, but requires applying both subsections (d)(1) and (d)(2) of § 2254 to determine whether the facts are correct and the law was properly applied to the facts. *Id. (*citing *Hamilton v. Mullin,* 436 F.3d 1181, 1194 (10th  Cir. 2006); *Hale v. Gibson,* 227 F.3d 1298, 1335 n. 17 (10th Cir. 2000) (noting precedent has investigated sufficiency of the evidence both

as a legal question and as a factual question).  The Court also must defer to any

determination of factual issue by the state court due to the presumption of correctness

afforded by § 2254(e).  *Fields v. Gibson,* 277 F.3d 1203, 1221 (10th Cir. 2002).

The evidence before the jury, as stated above, include that (1) Applicant was

wearing a knee brace at the time he entered the jail (Nov. 15, 2004 Trial Tr. at 205); (2)

the deputy Applicant tried to have "taken out" provided him with a razor to shave his hair

off (*Id.* at 223-26); (3) Applicant blamed this deputy for the poor haircut and the insulting

remarks made to him about the hair cut from other inmates (Nov. 16, 2004 Trial Tr. at

52-53, 63); (4) Mr. Delgado gave the deputy the metal Applicant had given to him and

stated that he saw the "knives" in Applicant's mattress  (Nov. 15, 2004 Trial Tr. at 252

and *Id.* at 53); (5) two searches of Applicant's cell yielded three pieces of metal hidden

in a mattress, one which was sharpened, and a disassembled knee brace (Nov. 15,

2004 Trial Tr. at 246 and 258); (6) other searches of a cell below Applicant's yielded two

other pieces of metal and uncovered a crack in the ceiling through which items could be

passed from Applicant's cell to the cell below (*Id.* at 242, 257, and 264).  This evidence

was provided by the testimony of three individuals, two deputies and Mr. Delgado.

Applicant's defense attorney extensively cross-examined each of these

witnesses.  *See* Nov. 15, 2004 Trial Tr. and Nov. 16, 2004 Trial Tr.  Mr. Delgado's

criminal history and  favorable plea he received in his criminal case for testifying was

presented by the prosecution in great detail.  During cross-examination of Mr. Delgado,

Applicant's defense attorney, with exceptional enthusiasm, sought to discredit his

testimony based on the favorable plea that he received.  Furthermore, although Mr.

Delgado identified someone other than Applicant as the offender in court, *see* Nov. 16,

2004 Trial Tr. at 44, the prosecution submitted evidence of Mr. Delgado's earlier line-up

identification of Applicant as the individual who approached him to harm a deputy, *see*

*id.* at 45.  Applicant's defense attorney also performed a voir dire examination of

Applicant's line-up photo that was entered into evidence and challenged Mr. Delgado's

in-court identification compared to the earlier line-up identification.  *See id.* at 55-59.

The Court, therefore, finds after reviewing the trial transcripts with particular detail that

the evidence was sufficient to find that applicant solicited Mr. Delgado to harm a deputy

and introduced and possessed contraband in the jail.  The issue is not the sufficiency of

the evidence but whether Mr. Delgado was credible.

The credibility of a witness is entirely within the province of the jury and  "virtually

unreviewable on appeal."  *See United States v. Bass*, 661 F.3d 1299, 1307 (10th Cir.

2011) (quoting *United States v. Virgen-Chavarin*, 350 F.3d 1122, 1134 (10th  Cir. 2003)

(internal quotation marks omitted).  A witness's testimony is disregarded only if "it is

unbelievable on its face," in other words if it asserts "facts that the witness physically

could not have possibly observed or events that could not have occurred under he laws

of nature."  *Bass*, 661 F.3d at 1307-08 (quoting *Virgen-Chavarin*, 350 F.3d at 1134)

(internal quotation marks omitted).

Nothing in Mr. Delgado's testimony supports a finding that the testimony was

unbelievable on its face.  The evidence was sufficient to support Applicant's conviction

for solicitation to commit first degree murder and introduction and possession of

contraband.  Applicant, therefore, has not rebutted the state court's factual findings by

clear and convincing evidence.  The CCA's determination that the evidence was

sufficient, is not contrary to or an unreasonable application of any clearly established

rule of federal law as determined by the U.S. Supreme Court.  The insufficient evidence

claim, therefore, lacks merit and will be dismissed.

## C.    Claim Three

As stated above, Applicant asserts that his right to effective assistance of

counsel was violated due to counsel's failure to object to sleeping jurors.

It was clearly established when Applicant was convicted that a defendant has a

right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668

(1984).  To establish that counsel was ineffective, Applicant must demonstrate both that

counsel's performance fell below an objective standard of reasonableness and that

counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687.

"Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  "A

court considering a claim of ineffective assistance must apply a 'strong presumption'

that counsel's representation was within a 'wide range' of reasonable professional

assistance."  *United States v. Rushin*, 642 F.3d 1299, 1306 (10th Cir. 2011) (quoting

*Richter*, 131 S. Ct. 770, 787 (2011) (citation omitted).  It is an applicant's burden to

overcome this presumption by showing that the alleged errors were not sound strategy

under the circumstances, *see Strickland*, 466 U.S. at 689, and that the errors were so

serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by

the Sixth Amendment.' "  *Rushin*, 642 F.3d at 1307 (quoting *Richter*, 131 S. Ct. at 787)

(emphasis and citation omitted).  An applicant must show counsel failed to act

"reasonably considering all the circumstances."  *Cullen v. Pinholster*, 131 S. Ct. 1388,

1403 (2011) (quoting *Strickland*, 466 U.S. at 688, 690).

Under the prejudice prong, an applicant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In assessing prejudice under *Strickland* the question is whether it is reasonably likely the result would have been different. *Richter*, 131 S. Ct. at 791-92. "The likelihood of a different result must be substantial, not just conceivable." *Id.* (citing *Strickland*, 466 U.S. at 693.)

Furthermore, under AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard," which is the question asked "on direct review of a criminal conviction in a United States district court." *Richter*, 131 S. Ct. at 785. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788.

If Applicant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See Strickland* at 697. Also, ineffective assistance of counsel claims are mixed questions of law and fact. *See id.* at 698. Pursuant to § 2254(e)(1), the factual findings of the state courts are presumed correct. Applicant bears the burden of rebutting this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). With respect to Applicant's ineffective assistance of counsel claim, the CCA found as follows:

> At the Crim. P. 35(c) hearing, three of defendant's family members (his mother, sister, and daughter) testified that two jurors, as well as the trial judge,[2] were sleeping during portions of the trial, and that they had informed trial counsel of this.

33

[2] The judge who presided at trial was not the judge who presided over the postconviction relief proceedings.

In contrast, the two trial prosecutors, as well as their advisory witness testified that, despite paying close attention to the jury, they never saw any juror asleep during trial.  The two prosecutors were also asked about a sleeping judge, and both testified they did not see the judge asleep at any time.

The district court noted that, although, following trial, defendant had moved for a new trial based on an allegation that one juror was sleeping, now three years later, there supposedly were two sleeping jurors, as well as a sleeping judge.  "So now," the court found, "we have three jurors and a judge sleeping during a three-day trial, and a three-day trial that is not a document intense case. . . .  It is a solicitation for murder [case]."

The district court further noted that the defense witnesses' descriptions of the sleeping jurors did not "match each other,"[3] and that the prosecutors and their advisory witness, who were sitting close to the jury, did not notice any sleeping jurors.  All in all, the court did not find any credible evidence that any jurors were sleeping during trial.

[3] For example, the witnesses' testimony was not uniform regarding where the male juror was sitting (i.e., second row or second chair in the first row; closer to the right on the lower level of chairs; and front row in the first or second seat), the male juror's age (i.e.,mid-thirties; fifties; and sixties), and the female juror's hairstyle (i.e., short, grayish hair; longer-than-shoulder-length, blondish-brownish hair; long, dark hair).

On appeal, defendant relies exclusively on the testimony of his three witnesses to support his assertion that he proved the predicate to his ineffective assistance claim, that is, that two jurors slept (and defense counsel was aware that they slept) during trial.

He ignores, however, the existence of contrary evidence, the trial court's prerogative to determine the credibility and weight of conflicting evidence, and the deference we grant to the trial court's findings of fact based on credibility determinations.

Here, the trial court rejected, on credibility grounds, the evidence upon which defendant relies.  Because the weight and credibility to be given to the testimony of witnesses are for the trial court to determine, we uphold the trial court's determination that defendant was not entitled to postconviction relief on this ground.  *See People v. Robbins*, 87 P.3d 120,

123 (Colo. App. 2003) ("if there is sufficient evidence in the record to
support the court's findings, its ruling will not be disturbed on review."),
*aff'd*, 107 P.3d 384 (Colo. 2005).

*People v. Savajian*, No. 08CA 2485, 6-8 (Colo. App. Oct. 21, 2010).

First, the Court has reviewed the trial transcript and finds nothing in the record
about a sleeping juror.  The Court has reviewed the testimonies given by Applicant's
three family members and by the prosecution's three-member team at the Rule 35(c)
postconviction hearing.  The three family members provided conflicting testimony
regarding the description of the two sleeping jurors and where they set.  Oct. 17, 2008
Hr'g Tr. at 9-55.  Their affidavits regarding the sleeping jurors lack credibility because
they are identical and are signed on the same date and at the same time.  *Id.* at 116.  It
is pointed out by the state during closing argument at the October 17 hearing that family
members did not identify in the affidavit the two jurors who were sleeping during Mr.
Delgado's testimony or that the judge was sleeping, even though they all testified at the
hearing that two jurors and the judge were sleeping during the trial.  *Id.*  Further, the
three-year delay in family members coming forward adds to the lack of credibility.

Given the prosecution's testimony at the October 17 hearing that each of the
three-member team set within ten feet of the jurors during the trial and that it is
customary for the prosecution to watch jurors, but they did not see a sleeping juror,
there is a credible basis for finding there were no sleeping jurors.  *Id.* at 55-108.
Accordingly, even if Applicant did tell his defense attorney that he observed sleeping
jurors, he fails to carry his burden of clear and convincing evidence that indeed there
were sleeping jurors.

Therefore, a reasonable argument exists for finding that counsel satisfied the

*Strickland* deferential standard.  *See Richter*, 131 S. Ct. at 788.  The CCA decision

regarding this claim did not result in a decision that was contrary to, or involve an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States and did not result in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the

state court proceeding.

## V. CONCLUSION

Accordingly, it is ORDERED that Applicant Gregg Joseph Savajian's Application

for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") (ECF No. 1) is

DENIED and the civil action is dismissed WITH PREJUDICE.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's

fees.  It is

FURTHER ORDERED that no certificate of appealability will issue because

Applicant Gregg Joseph Savajian has not made a substantial showing of the denial of a

constitutional right, pursuant to 28 U.S.C. § 2253(c).  It is

FURTHER ORDERED that the Court certifies pursuant to 28 U.S.C. § 1915(a)(3)

that any appeal from this Order would not be taken in good faith and therefore *in forma*

*pauperis* status is denied for the purpose of appeal.  *See Coppedge v. United States*,

369 U.S. 438 (1962).  If Applicant files a notice of appeal he also must pay the full $455

appellate filing fee or file a motion to proceed in forma pauperis in the United States

Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App.

P. 24.

Dated this 10th day of December, 2012.

BY THE COURT:

William J. Martinez
United States District Judge